**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | | |
|---|---|---|
| **HOWELL W. WOLTZ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 5:09-1177** |
| | ) | |
| **DAVID A. BERKEBILE,** | ) | |
| **Warden, FCI Beckley,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## PROPOSED FINDINGS AND RECOMMENDATION

Pending are the following Motions: (1) Plaintiff's Motion for Interlocutory Injunctive Relief (Document No. 13.), filed on December 16, 2009; (2) Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Document No. 24.), filed on March 12, 2010; and (3) Plaintiff's Motion to Amend Complaint (Document No. 45.), filed on June 17, 2010. By Order filed on March 15, 2010, Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff, advising him of his right to file a response to Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. (Document No. 26.) Plaintiff filed his Response to Defendant's Motion to Dismiss, or in that Alternative Motion for Summary Judgment on March 30, 2010.[1] (Document No. 30.) Having examined the record and considered the applicable law, the undersigned has concluded that Plaintiff did not exhaust administrative remedies with respect to his claims in this matter and therefore hereby respectfully recommends that this matter be dismissed.

---

[1] Because Plaintiff is acting *pro se*, the documents which she has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

## FACTUAL AND PROCEDURAL BACKGROUND

By letter dated October 23, 2009, Plaintiff informed the Court that he was not receiving medical care for his abscessed tooth or broken shoulder. (Document No. 1.) The Clerk of the Court designated Plaintiff's letter as a <u>Bivens</u> Complaint thereby initiating the above action. (<u>Id.</u>) The Clerk mailed Plaintiff a copy of a form Complaint and Application to Proceed *in forma pauperis*. On November 2, 2009, Plaintiff filed his Complaint naming David A. Berkebile, Warden of FCI Beckley, as the Defendant.[2] (Document No. 3.) Plaintiff complains that he has not received any dental treatment since his arrival at FCI Beckley on February 8, 2008. (<u>Id.</u>, p. 2.) Plaintiff states that upon arrival at FCI Beckley he immediately requested dental care for his abscessed tooth because he was in "serious pain." (<u>Id.</u>) Plaintiff was told to "watch call-out in 28 - 34 weeks for an appointment." (<u>Id.</u>) Plaintiff states that he received an appointment thirty-six weeks later, "but no dental personnel came that day, which required another request to be made, according to medical personnel, and another 28 - 34 weeks of painful waiting." (<u>Id.</u>, pp. 2 - 3.) On December 25, 2008, Plaintiff asserts that his tooth "crumbled from the lack of care," which exposed the nerve causing intense pain. (<u>Id.</u>, p. 3.) On April 16, 2009, Plaintiff contends that he "was shipped out on a writ of no known purpose, having had no response to his requests, any care ever provided, or even the mandatory check-up required upon entry into the system and prison. At each stop, Plaintiff's first action was to request help for his painful condition, to no avail: Chickasha, OK; Atlanta, GA; Charlotte, NC; Ocilla, GA; Chickasha, OK; at each detention center, medical assistance for painful condition was denied or withheld by government." (<u>Id.</u>) Plaintiff was returned to FCI Beckley on August 26, 2009, and again

---

[2] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

requested dental treatment. (Id.) As of the date of Plaintiff's Complaint, Plaintiff states that he has not received any dental treatment. (Id.) Thus, Plaintiff alleges that staff at FCI Beckley are acting with deliberate indifference to his serious dental needs. (Id., p. 4.) Plaintiff further alleges that FCI Beckley staff acknowledges the "insufficiency of dental personnel." (Id.)

By Order filed on November 19, 2009, the undersigned granted Plaintiff's Application to Proceed *in forma pauperis* and assessed an initial partial filing fee of $100.04. (Document No. 9.) The Clerk was directed not to issue process unless and until Plaintiff paid the initial partial filing fee. (Id.) On December 16, 2009, Plaintiff filed a "Motion for Order and Interlocutory Relief Pursuant to Rule 65(a)." (Document No. 13.) Plaintiff requests that the Court enter an Order "requiring the defendant to provide plaintiff the medical and dental care required by law and the United States Constitution while this action is pending." (Id.) In support of his Motion, Plaintiff alleges as follows: (1) "Dental damage done by deliberate indifference of defendants is continuing, and irreparable damage, which could be avoided by adequate dental attention during interlocutory period is being denied;" (2) "After 44 months of incarceration in custody of defendant, plaintiff has received no preventive care of any kind, and no remedial care for multiple tooth and gum problems, other than an emergency extraction after 22 months of pain and complaint;" (3) Dr. Edward Hanley stated on July 7, 2009, that Plaintiff's shoulder required surgery to restore full use but defendant has failed to provide any assistance; and (4) Plaintiff was removed from his job as a law librarian in order to deny him access to the court and to limit his ability to assist other inmates. (Id., pp. 1 - 3.) Plaintiff states that "[w]ithout the requested relief being granted, Plaintiff's medical and dental needs can only worsen or become irreparable by the continuing and deliberate indifference of the defendants to his needs and their constitutional duty." (Id., p. 3.)

On December 17, 2009, Plaintiff filed an Affidavit (Document No. 15.) stating that "[t]he

3

anticipated campaign of harassment by staff in response to Case No. 5:09-cv-1177 . . . has begun."
Plaintiff alleges that on December 15, 2009, he attempted to submit an "Inmate Request To Staff"
requesting dental care and medical treatment for his shoulder, but Officer White "refused to accept
the official duplicate forms, or to sign his name acknowledging that he had refused them." (Id., p. 1.)
Plaintiff states that when he asked for the form to be returned, Officer White ordered all inmates out
of the waiting room, "locked the door behind them, so I was isolated and no witnesses were present."
(Id.) Plaintiff contends that Officer White "stood over me menacingly and threatened me for trying
to use the official 'duplicate' forms." (Id.) Plaintiff claims "duplicate forms have become necessary
as the single-page photocopy version provided to us by staff, leaves no record, which is the obvious
intent." (Id.) Plaintiff asserts that Officer White's "severe and threatening behavior, after ordering
all witnesses to leave the premises, can only be interpreted as reprisal and retaliation against me
personally for filing the instant federal action against Medical Officer White's department in violation
of my civil rights under color of law." (Id., p. 2.)

The Court received Plaintiff's filing fee in the amount of $350.00 on January 13, 2010.
(Document No. 19.) Summonses were issued and returned executed. (Document Nos. 20 - 22.) On
January 19, 2010, Plaintiff filed his letter-form Motion to Expedite. (Document No. 23.) On March
12, 2010, Defendant filed his Motion to Dismiss, or in the Alternative Motion for Summary Judgment
and Memorandum in Support. (Document Nos. 24 and 25.) Defendant argues that Plaintiff's
Complaint should be dismissed based on the following: (1) Plaintiff failed to properly exhaust his
administrative remedies (Document No. 25, pp. 2 - 5.); (2) "*Respondeat superior* and supervisory
liability are inapplicable in a Bivens action" (Id., pp. 5 - 7.); (3) "Warden Berkebile is entitled to
qualified immunity" (Id., pp. 7 - 9.); and (4) "Plaintiff's request for injunctive relief should be
denied" (Id., pp. 9 - 11.). In support of his Motion, Defendant attaches the following Exhibits: (1)

4

Declaration of John Grimes (Document No. 24, pp. 3 - 4.); and (2) Copies of the "Administrative Remedy Generalized Retrieval" Sheet (Id., pp. 6 - 7.).

On March 15, 2010, Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff, advising him of the right to file a response to the Defendant's Motion to Dismiss, or in the Alternative Motion for Summary Judgment. (Document No. 26.) On March 24, 2010, Plaintiff filed a "Motion to Compel Defendants to Comply with Rules of Discovery." (Document No. 27.) On March 25, 2010, Plaintiff filed his Response arguing that Plaintiff's Motion to Compel should be dismissed because (1) "Plaintiff seeks to compel discovery from the United States, but the United States is not a party to this action;" (2) Plaintiff served his discovery requests on November 23, 2009, prior to Defendant being served with process on January 19, 2010; and (3) The Court should stay discovery until Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment is ruled upon by the Court. (Document No. 28.) On March 29, 2010, Plaintiff filed his second "Motion to Compel Defendants to Comply with Rules of Discovery." (Document No. 29.) On April 2, 2010, Plaintiff filed his Motion to Extend Time to Conduct Discovery (Document No. 31.) and "Plaintiff's Response to Defendant's Response to Motion to Compel" (Document No. 32.). In Plaintiff's Response, he contends that the United States is party and Defendant Berkebile was properly served with interrogatories.[3] (Document No. 32, p. 2.) Plaintiff asserts that Defendant is delaying discovery so that inculpatory evidence can be destroyed. (Id.) In support of his Response, Plaintiff attaches the following Exhibits: (1) Copy of a letter dated February 18, 2010, from Plaintiff to the United States Attorney Office for the Southern District of West Virginia reporting "possible criminal activity" (Id., pp. 8 - 9.); (2) Copy of an Affidavit by Plaintiff

_____

[3]  The United States is not a "person" as required by *Bivens*.

regarding the shredding of "legal documents" by BOP attorneys (Id., pp. 10 - 11.); (3) Copy of the "Entry Authority Listing" for the Consolidate Legal Center (Id., p. 12.); (4) Copy of an Affidavit from Inmate Christopher Herrera stating that he shredded boxes of complaint forms, legal mail, cop-outs, and grievances from inmates at the direction of Officer Richmond (Id., p. 13.); (5) Copy of an Affidavit by Plaintiff stating his legal mail is being illegally opened by prison officials (Id., p. 14.); and (6) Copy of envelopes addressed to Plaintiff from Judge Laurie Hutchins and the United States District Court (Id., p. 15.)

On March 30, 2010, Plaintiff filed his "Response to Motion to Dismiss and Notice of Default." (Document No. 30.) First, Plaintiff argues that Defendant is in "default and subject to summary judgment" because Defendant "did not respond, as ordered by the court, but filed a Motion to Dismiss and an affidavit under law which does not exist (18 U.S.C. § 1746) instead." (Id., p. 1.) Next, Plaintiff argues that the "Government's callous indifference goes beyond its refusal to respond and spans a period of 47 months of stated and proven denial of dental and medical needs of Plaintiff, following a prosecution also characterized by complete disregard for law and Constitution." (Id., p. 2.) Plaintiff contends that Defendant "has been at the Beckley institution for over one year, and cannot claim to be unaware of the torrid activities occurring at this facility." (Id.) Plaintiff argues Defendant's motion to dismiss is inappropriate prior to discovery because "genuine issues cannot be further surfaced and developed without it." (Id.) Plaintiff claims that Defendant "is aware of the denial [of medical treatment], but plaintiff still suffers from a broken shoulder, which two government doctors have determined requires surgery, and dental problems still continue unaddressed." (Id., p. 3.) Plaintiff argues that Defendant's Motion "puts more issues in controversy, while resolving none, and fails to address continuing denial." (Id.) Specifically, Plaintiff states that there is "material dispute" as to the following: (1) "The instant suit is not about 'prison conditions'

6

as defendant would mislead the court, [but] is in regard to violations of the United States Constitution;" (2) "The administrative remedy process has been rendered ineffective by defendants making further exhaustion impossible;" (3) "Administrative remedies, within those allowed, have been fully exhausted as proven by Exhibits A - G;" (4) "Defendant and affiant John Grimes filed an affidavit in support of Motion to Dismiss under 18 U.S.C. § 1746, which is not a statute under the United States Code [and] Defendant's Motion was unsigned in violation of Rule 11(a);" (5) "Affiant Grimes' attestation that Case Managers and Camp Administrator/Assistant Warden (Scarantio) are sources for remedy and forms when refused by Counselors is patently false when the complaint is against another employee;" (6) "Government's refusal to respond at all is understandable as it cannot claim innocence or ignorance of Plaintiff's plight as proven by Exhibit H . . . regarding the denial of dental treatment for severe abscess, broken shoulder, and refusal to provide any dental care;" and (7) Plaintiff was not required to exhaust his administrative remedies because correctional officers failed to file his grievances or otherwise impeded or prevented his efforts. (Id., pp. 4 - 7.)

In support of his Response, Plaintiff attaches the following Exhibits: (1) Copy of Inmate Jerome Woody's "Regional Administrative Remedy Appeal" dated January 31, 2010, complaining of the denial of administrative remedy process (Id., pp. 10 - 11.); (2) Copy of Inmate Woody's "Inmate Request to Staff" dated January 13, 2010, complaining that Counselor Grimes has harassed him (Id., p. 12.); (3) Copy of Inmate Woody's "Inmate Request to Staff" dated January 25, 2010, complaining that he had not received a response concerning his January 13, 2010, grievance (Id., p. 13.); (4) Copy of a letter dated February 1, 2010, from Inmate Woody to Regional Director Kim White regarding his attempts to file a BP-9 (Id., p. 14.); (5) Copy of a letter dated February 4, 2010, from Inmate Woody to Regional Director White stating that he is being retaliated against "for filing against Officer Grimes" (Id., pp. 15 - 16.); (6) Copy of Inmate Woody's "Inmate Request to Staff"

7

dated February 4, 2010, complaining that he was improperly sanctioned for refusing halfway house placement (Id., pp. 17 - 18.); (7) Copy of an Affidavit from Inmate Jorge Mendez stating Officer Cuttright assaulted him and his counselor refused to see him when he requested a BP-9 form (Id., pp. 19 - 20.); (8) Copy of an Affidavit from Plaintiff stating that Counselor Grimes refused to provide him with a BP-9 form (Id., p. 21 - 22.); (9) Copy of Plaintiff's "Inmate Request to Staff" dated February 17, 2009, complaining that he lost the job at the law library based upon a false incident report filed by Officer Taylor (Id., p. 23.); (10) Copy of an Affidavit from Inmate Dwuane MacClendon stating that he was denied timely dental care and he suspected that his administrative requests were either "ignored or destroyed" (Id., p. 24.); (11) Copy of an Affidavit from Plaintiff stating that Officer White refused to accept the official duplicate form of his "Inmate Request to Staff" concerning claims of inadequate dental and medical care (Id., pp. 25 - 26.); (12) Copy of an Affidavit from Inmate Carey Dawson stating that Officer Cuttright assaulted him and Counselor Grimes refused to provide him with a BP-9 form (Id., pp. 27 - 30.); (13) Copy of a letter dated September 8, 2009, from Plaintiff to Nancy Laughlin, Clerk of the United States District Court for the Western District of North Carolina (Id., p. 31.); (14) Copy of Plaintiff's "Compliance with Clerk's Order" filed in the Western District of North Carolina (Id., pp. 32 - 35.); (15) Copy of a "Health Service Request" form (Id., p. 36.); (16) Copy of a letter dated July 2, 2009, from Attorney Arthur Strickland to the United States Marshals Service in the Western District of North Carolina requesting that Plaintiff be provided medical attention for his abscessed tooth (Id., p. 37.); (17) Copy of the Western District of North Carolina's Docket Sheet for Case No: 3:09-cv-00273 (Id., pp. 38 - 39.); (18) Copy of Plaintiff's "Order to Show Cause for a Preliminary Injunction to Provide Medical Services to Plaintiff" filed in Case No: 3:09-cv-00273 in the Western District of North Carolina (Id., pp. 40 - 45.); (19) Copy of Plaintiff's Complaint filed in Case No: 3:09-cv-00273 in the Western

8

District of North Carolina alleging inadequate medical and dental care (Id., pp. 46 - 54.); (20) Copy of a letter dated February 18, 2010, from Plaintiff to the United States Attorney Office for the Southern District of West Virginia reporting "possible criminal activity" (Id., pp. 55 - 56.); (21) Copy of an Affidavit by Plaintiff regarding the shredding of "legal documents" by BOP attorneys (Id., pp. 57 - 58.); (22) Copy of the "Entry Authority Listing" for the Consolidate Legal Center (Id., p. 59.) (23) Copy of an Affidavit from Inmate Christopher Herrera stating that he shredded boxes of complaint forms, legal mail, cop-outs, and grievances from inmates at the direction of Officer Richmond (Id., p. 60.); (24) Copy of Plaintiff's "Inmate Request to Staff" dated January 11, 2010, requesting dental care (Id., p. 61.); (25) Copy of an Affidavit by Plaintiff stating his legal mail is being illegally opened by prison officials (Id., p. 62.); (26) Copy of envelopes addressed to Plaintiff from Judge Laurie Hutchins and  the United States District Court (Id., p. 63.); (27) Copy of an Affidavit from Inmate Adam Cano stating prison officials are opening his outbound mail and refuse to provide him with copies of his medical records (Id., p. 64.); and (28) Copy of Inmate Cano's "Inmate Request to Staff" dated February 2, 2010, requesting his medical records and a second opinion from an eye surgeon (Id., pp. 65 - 66.).

On April 4, 2010, Plaintiff filed a "Motion for Injunctive Interlocutory Relief on Emergency Basis." (Document No. 33.) Plaintiff requests that the Court "immediately order Defendant Berkebile and the United States, to cease and desist: (1) illegal mail tampering (both incoming and outgoing); (2) refusing to provide SPECIAL MAIL facility as required by B.O.P. policy and law, and; (3) call for a federal investigation by an independent agency immediately, to prevent further criminal activity on the part of defendants, and (4) issue restraining orders against any retaliation by B.O.P. or staff with regard to Affiants in the instant suit, who had the courage to come forward at great personal risk

9

to being these matters to the Court's attention."[4] (Id., pp. 3 - 4.)

On April 6, 2010, Defendant filed his Reply. (Document No. 34.) First, Defendant notes that Plaintiff admits that his lawsuit is based upon the alleged misconduct by other staff members. (Id., p. 1.) Defendant, therefore, argues that "[w]ith this admission, Warden Berkebile is entitled to qualified immunity because he was not personally involved in any action which plaintiff alleges violated his constitutional rights." (Id.) Second, Defendant claims that Plaintiff "fails to address the fact that he has filed an administrative remedy in the past, which corroborates Officer Grimes Declaration that those forms are available from multiple sources." (Id., p. 2.) Defendant further argues that Plaintiff's claim that the administrative remedy process has been rendered ineffective is without merit because "the number of administrative remedies filed by inmates at the SPC or camp where plaintiff is housed is steadily increasing." (Id.) Finally, Defendant argues that Plaintiff "is not entitled to discovery in a Bivens action until after the resolution of the issue of qualified immunity." (Id., pp. 2 - 3.) In support of his Reply, Defendant attaches the following: (1) A Declaration from Rita Tolen, Associate Warden's Secretary and Administrative Remedy Clerk at FCI Beckley (Id., pp. 4 - 5.); and (2) A copy of the "Administrative Remedy Generalized Retrieval" Sheet from January 1, 2007 to April 1, 2010 (Id., pp. 6 - 11.)

On April 13, 2010, Plaintiff filed a "Request for Preliminary Injunction." (Document No. 37.) Specifically, Plaintiff requests "an immediate preliminary injunction to stop defendants' violation of a right of constitutional access to courts and of free expression." (Id., p. 1.) Plaintiff contends that he is being denied access to the court because the prison is "illegally restricting copy card purchase to

---

[4]   The undersigned notes that Plaintiff currently has an action pending regarding his allegation that he is being denied access to the Courts. *Woltz v. Scarantino, et al.*, Civil Action No. 5:10-0095.  Plaintiff's "Petition for Temporary Restraining Order and Preliminary Injunction" is currently pending in the above action. (*Id.*, Document No. 18.)

two (2) cards per week." (Id.) Plaintiff alleges that he has eight active court actions pending and nine "appeals and actions where Plaintiff is assisting other prisoners." (Id.) Plaintiff argues that the "restriction of access to copies is a de facto denial of access to these courts and ability to follow their rules of notification and service on attendant parties." (Id., p. 2.) Plaintiff contends "just one motion to the court, with copies, takes one copy card or more." (Id.) Plaintiff further states that he has three books currently "in pre-publish or editing stages" and all require multiple copies and constant changes. (Id.) Therefore, Plaintiff requests that the Court enter an Order requiring Defendants: (1) "Cease limiting means and supplies necessary for free expression and access to court, such as typewriter ribbons, copy cards, and stamps for certified mailing;" (2) "Make public notice of recision of any order limiting these items;" (3) "Cease and desist any illegal mail tampering outside of written policy, and comply with requirements of Special Mail, legal mail, and outbound mail, or find themselves in contempt of this Honorable Court, and any other relief the court deems appropriate." (Id., pp. 3 - 4.) Plaintiff attaches as an Exhibit a copy of the "Memorandum for Inmate Population" dated April 6, 2010, regarding inmate photocopy cards.[5] (Id., p. 5.)

On May 3, 2010, Plaintiff filed his "Second Motion for Extension of Time to Perform Discovery." (Document No. 41.) Plaintiff states that "affidavits are being gathered from victims of 1) medical abuse, 2) intimidation, and 3) reprisals for complaint." (Id., p. 1.) Plaintiff explains that "these affiants include both those still at FPC Beckley, as well as those who have been released, which is a difficult and time-consuming process." (Id.) Plaintiff claims that "Affidavits regarding the systematic and methodical denial of dental and medical care by Dr. S. Hughes, K. Karl, P.A.

---

[5]  The record does not support Plaintiff's allegation that the prison's restriction on "copy cards" is affecting his access to the Court as Plaintiff has filed numerous and lengthy documents with the Court.

Shrewsbury and Dr. Edwards are also being gathered, but the atmosphere of co-ordinated intimidation, threats and staff reprisals makes the process difficult, fraught with personal danger, and lengthy." (<u>Id.</u>, p. 2.) Accordingly, Plaintiff requests the Court "extend the period of discovery to allow collection of additional affidavits and evidence in the interest of justice and badly needed reform." (Id, pp. 3 - 4.)

On June 7, 2010, Plaintiff filed his "Notice of Filing Evidence and Affidavits as Protective Measure." (Document Nos. 43 and 44.) Plaintiff includes an Affidavit stating that Counselor Grimes improperly searched his cell and placed contraband in his locker. (Document No. 43, pp. 2 - 3.) Plaintiff therefore claims that he is concerned that Counselor Grimes will destroy his evidence and finds it is necessary to file copies of the evidence "as a protective measure." (<u>Id.</u>, pp. 3 - 8.) Plaintiff attaches the following Exhibits: (1) Copy of an Affidavit from David Wynn, a former FCI Beckley inmate, stating Counselor Grimes threatened to retaliate against him for assisting another inmate type a Complaint against Counselor Grimes (Document No. 44, pp. 5 - 6.); (2) Copy of a letter dated May 9, 2010, from Mark Johnson to Plaintiff stating he had signed the Affidavit prepared by Plaintiff and returned it to Mr. Strickland (<u>Id.</u>, p. 7.); (3) Copy of an Affidavit by Plaintiff stating that Counselor Grimes removed Plaintiff's name from the "call-out list" in an unsuccessful attempt to retaliate against Plaintiff (<u>Id.</u>, pp. 8 - 10.); (4) Copy of a Declaration from Inmate Steven Griggs stating that despite filing grievances and "cop-outs," Dr. Berrios improperly delayed medical treatment for his injured back (<u>Id.</u>, 11 - 15.); (5) Copy of an Affidavit by Inmate Steven Griggs stating that he was assaulted by Officer White (<u>Id.</u>, pp. 16 - 18.); (6) Copy of an Affidavit from Inmate Carey Dawson stating that Officer Cuttright assaulted him and Counselor Grimes refused to provide him with a BP-9 form (<u>Id.</u>, pp. 19 - 22.); (7) Copy of an Affidavit from Inmate Dwuane MacClendon stating that he was denied timely dental care and he suspected that his administrative requests were either "ignored

or destroyed" (Id., p. 23.); (8) Copy of an Affidavit from Inmate Adam Cano stating prison officials are opening his outbound mail and refuse to provide him with copies of his medical records (Id., p. 24.); (9) Copy of "Report of Shoulder Injury" (Id., p. 25.); (10) Copy of a Deposit Receipt from the "Irwin County Detention Center" (Id., p. 26.); (11) Copy of an Affidavit from Inmate Desper Jermichael stating that he has been assaulted by Officer Cuttright (Id., p. 27.); (12) Copy of an Affidavit from Inmate Desper Jermichael stating that Counselor Grimes refused to provide him with an administrative remedy form (Id., p. 28.); (13) Copy of an Affidavit from Inmate Jerome Woody stating there is no administrative remedy process at FCI Beckley (Id., p. 29.); (14) Copy of Inmate Woody's "Inmate Request to Staff" dated January 13, 2010, complaining that Counselor Grimes was harassing him (Id., p. 30.); (15) Copy of Inmate Woody's "Request for Administrative Remedy" dated March 3, 2010, complaining about the absence of an administrative remedy system (Id., p. 31.); and (16) Copy of an Affidavit from Inmate Christopher Herrera stating that he shredded  boxes of complaint forms, legal mail, cop-outs, and grievances from inmates at the direction of Officer Richmond (Id., p. 32.).

On June 17, 2010, Plaintiff filed a Motion for "Joinder of Defendants Under Rule 20." (Document No. 45.) Specifically, Plaintiff requests that the following individuals be joined as Defendants: (1) Health Services Administrator Kevin Thompson, (2) Dr. Roger Edwards, (3) Nurse Conley White, (4) Dr. S. Hughes, and (5) Dental Assistant K. Karl. (Id.) In support, Plaintiff attaches the following Exhibits: (1) Plaintiff's "Inmate Request to Staff" dated September 2, 2009, requesting that the medical department obtain his medical records, MRI and x-ray from Carolinas Medical Center and Dr. Edward Hanley located in Charlotte, North Carolina (Id., p. 26.); (2) Plaintiff's "Inmate Request to Staff" dated September 28, 2009, concerning the lack of dental treatment (Id., p. 27.); (3) Plaintiff's "Inmate Request to Staff" dated October 12, 2009, requesting that he be placed

at the front of the "call out" list as he has been waiting for an appointment for 20 months (Id., p. 28.); (4) Plaintiff's "Inmate Request to Staff" dated October 16, 2009, inquiring whether his medical records had been obtained from North Carolina (Id., p. 29.); and (5) Plaintiff's "Inmate Request to Staff" dated January 11, 2010, complaining that he is not receiving dental treatment (Id., p. 30.)

On July 15, 2010, Plaintiff filed an "Affidavit and Information to Be Filed in Case with Law Relevant to Proceedings and Interim Request." (Document No. 46.) Plaintiff states that he has received "[n]o remedial treatment of any kind . . . since the injury, in spite of two specialists recommending surgery as the only means to restore normal use." (Id., p. 1.) Plaintiff claims that he has been denied basic dental care since his incarceration. (Id., pp. 1 - 2.) Plaintiff alleges that "[t]he emergency needs which plagued Plaintiff throughout his unconstitutional incarceration were not addressed until after the filing of the instant lawsuit in October of 2009, due to admitted under-staffing in violation of their own policy . . . and indisputable indifference." (Id., p. 2.) Plaintiff contends that the "[l]ocal rules have been designed solely to defy the Equal Protection and Due Process Clause of the Fifth and Fourteenth Amendments and to deny prisoners their Sixth Amendment right of access to the courts, but they are also unlawful." (Id., pp. 3 - 4.) Plaintiff states that defendants' "callous and instituted indifference is still on daily display at FPC-Beckley." (Id., p. 4.) Plaintiff argues that he has stated "a case for relief under the Eighth Amendment and eliminated any claim of immunity by defendants, as they have transgressed in violation of their own polices and guidelines, as well as law any reasonable person would know." (Id., p. 5.) In support, Plaintiff attaches the following Exhibits: (1) Chart summarizing evidence (Id., p. 9.); (2) Plaintiff's "Inmate Request to Staff" dated September 28, 2009, concerning the lack of dental treatment (Id., p. 10.); (3) Copy of an e-mail dated June 29, 2010, regarding Inmate George Smith's request for hearing aids (Id., p. 11.); (4) Copy of an Affidavit from Inmate Wayne Collins stating that Counselor Grimes

14

refuses to provide BP-9 forms (Id., pp. 12 - 14.); (5) Copy of Plaintiff's "Compliance with Clerk's Order" filed in the Western District of North Carolina in Case No. 3:09-cv-0273 (Id., pp. 15 - 18.); (6) Copy of a "Health Service Request" form (Id., p. 19.); (7) Copy of a letter dated July 2, 2009, from Attorney Arthur Strickland to the United States Marshals Service in the Western District of North Carolina requesting that Plaintiff be provided medical attention for his abscessed tooth (Id., p. 20.); and (8) Copy of Plaintiff's "Inmate Statement" (Id., pp. 21 - 22.)

## THE STANDARD

### Motion to Dismiss

A *pro se* Complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines v. Kerner, 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), quoting Conley v. Gibson, 355 U.S. 41, 45 - 46 (1957). Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

### Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most

favorable to the non-moving party. <u>Matsushita</u>, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. <u>Celotex</u>, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences that can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## **DISCUSSION**

### 1. **Exhaustion of Administrative Remedies.**

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[6] <u>Woodford v. Ngo</u>, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); <u>Porter v. Nussle</u>, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); <u>Booth v. Churner</u>, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's

_____

[6] 42 U.S.C. § 1997e(a) provides as follows:

No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). "[T]here is no futility exception to the PLRA's exhaustion requirement." Massey v. Helman, 196 F.3d 727, 733 (7th Cir. 1999). But the plain language of the statute requires that only "available" administrative remedies be exhausted. A grievance procedure is not "available" if prison officials prevent an inmate from using it. Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983, Bivens or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. See Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001)(overruled on other grounds), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources

adjudicating claims that could have been resolved within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. See Jones v. Bock, supra; Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. See Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)) The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. The Fourth Circuit stated in Anderson, 470 F.3d at 683, as follows:

> [A]n inmate's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant. That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies.

For Bivens purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, 376 F.3d at 655 (internal citations omitted); also see Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper

exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if

19

the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

In his Motion, Defendant contends that Plaintiff failed to exhaust fully all his administrative remedies prior to filing his Bivens Complaint. (Document No. 25, p. 3.) Defendant states that Plaintiff's administrative history records reveal that Plaintiff has failed to file any administrative remedies regarding his current complaint. (Id.) Defendant argues that "[i]t is clear that Plaintiff is aware of how to use the administrative remedy process, and that the grievance procedure is available to him, as is evident by his filing an administrative remedy on February 5, 2009, challenging disciplinary action taken against him by the Unit Discipline Committee." (Id., p. 4.) Defendant argues that Plaintiff's self-serving statement that there is an "unwritten policy and culture of FCI/FPC-Beckley, which rewards the use of legitimate grievance procedure with retaliation by staff, and delays" does not allow Plaintiff to bypass the administrative remedy process. (Id.) Defendant argues that Plaintiff has access to administrative remedy forms through Counselor Grimes. (Id., pp. 4 - 5.) Defendant states that "if Plaintiff ever had problems obtaining a form, he could obtain the form from other staff, including his case manager, other counselors, or the Camp Administrator." (Id., p. 5.) In support, Defendant submits the Declaration of John Grimes, a Correctional Counselor for the Satellite Prison Camp at FCI Beckley. (Document No. 24, pp. 3 - 7.) Counselor Grimes declares that in his position he has access to SENTRY, the Bureau of Prisons' online system containing, among other things, information about inmates' administrative remedy filings. (Id., p. 3.) Specifically, Counselor Grimes states as follows in his Declaration (Id., pp. 1 - 2.):

> 4.      A review of inmate Woltz's administrative remedy history in SENTRY reveals he has not filed any administrative remedies regarding his dental

treatment. He has only filed one administrative remedy, and that remedy was a challenge to disciplinary action taken against him by the Unit Discipline Committee.

5.    As a Counselor, my duties include attempting to informally resolve complaints made by inmates assigned to me, and to provide them with administrative remedy forms if a complaint cannot be resolved informally.

6.    I am the assigned Counselor for inmate Woltz and have been his Counselor since his arrival to FCI Beckley.

7.    Inmate Woltz has had, and continues to have access to speak with me.

8.    When inmate Woltz has requested administrative remedy forms from me, I have provided him the forms.

9.    I have never denied him access to administrative remedy forms.

10.    If inmate Woltz ever had problems obtaining a form, he could obtain the form for other staff, including has case manager, other counselors, or the Camp Administrator. Additionally, he could notify the Associate Wardens and/or the Warden of any problems in obtaining the proper forms.

(Id., pp. 3 - 4.) Accordingly, Defendant argues that Plaintiff's complaint should be dismissed because Plaintiff failed to file any administrative remedies concerning the claims raised in his complaint. (Id., p. 5.)

In Response, Plaintiff first argues that Defendant is in "default and subject to summary judgment" because Defendant "did not respond, as ordered by the court, but filed a Motion to Dismiss and an affidavit under law which does not exist (18 U.S.C. § 1746) instead."[7] (Document No. 30.) Next, Plaintiff contends that "Administrative remedies, within those allowed, have been fully exhausted as proven by Exhibits." (Id., pp. 4 - 7.) Plaintiff attaches copies of other inmate's grievances forms and numerous affidavits written by himself and other inmates complaining that

_____

[7] Defendant acknowledges that "Officer Grimes' Declaration does contain a typo: 18 U.S.C. § 1746 should read 28 U.S.C. § 1746." (Document No. 34, p. 2.)

prison officials refuse to provide BP-9 forms and retaliate against inmates for filing grievances. (Id., pp. 10 - 66.) Plaintiff also attaches affidavits and grievances filed by fellow inmates claiming that prison staff refuses to provide adequate medical and dental treatment to inmates. (Id.) Plaintiff explains that prison officials retaliate by verbally harassing inmates and threatening to place them in the Special Housing Unit.

In Reply, Defendant argues that Plaintiff's use of the administrative remedy process in the past corroborates Counselor Grimes' Declaration that administrative remedy forms are available from multiple sources. (Document No. 34, p. 2.) Defendant also asserts that FCI Beckley has an effective administrative remedy process because "the number of administrative remedies filed by inmates at the [Satellite Prison Camp] SPC or camp where plaintiff is housed is steadily increasing." (Id.) In support, Defendant submits the Declaration of Rita Tolen, Associate Warden's Secretary and Administrative Remedy Clerk at FCI Beckley. (Id., pp. 4 - 11.) Ms. Tolen declares that in her position she has access to SENTRY, the Bureau of Prisons' online system containing, among other things, information about inmates' administrative remedy filings. (Id., p. 4.) Ms. Tolen explains that as "Administrative Remedy Clerk, my duties include entering all of the administrative remedies filed by inmates into SENTRY." (Id.) Specifically, Ms. Tolen states as follows in her Declaration (Id.):

4.    Inmates housed within SPC at FCI Beckley have filed a total of 76 administrative remedies from January 1, 2007 until April 1, 2010.

5.    The following number of remedies have been filed by SPC inmates at FCI Beckley: 3 remedies filed in 2007; 14 remedies filed in 2008; 36 remedies filed in 2009; and already 23 filed so far this year.

From the record available to the Court, it appears that Plaintiff filed his Complaint without first exhausting his administrative remedies as to all claims. Defendant submits the Affidavit of Counselor Grimes, who has access to SENTRY, and states that Plaintiff's administrative remedy

history reveals that Plaintiff failed to fully exhaust all the claims alleged in the Complaint. On February 5, 2009, Plaintiff filed a BP-9 challenging disciplinary action taken against him by the Unit Discipline Committee. (Document No. 24, p. 7.) Plaintiff was not incarcerated at FCI Beckley from April 16, 2009, to August 26, 2009.[8] (Document No. 3, p. 3.) On September 2, 2009, Plaintiff filed an "Inmate Request to Staff" requesting that the medical department obtain his medical records, MRI and x-ray from Carolinas Medical Center and Dr. Edward Hanley located in Charlotte, North Carolina. (Document No. 45, p. 26.) On September 28, 2009, Plaintiff filed an "Inmate Request to Staff" concerning the lack of dental treatment.[9] (Id., p. 27.) On October 12, 2009, Plaintiff filed an "Inmate Request to Staff" requesting that he be placed at the front of the "call out" list as he has been waiting for a dental appointment for 20 months.[10] (Id., p. 28.) On October 16, 2009, Plaintiff filed an "Inmate Request to Staff" inquiring whether his medical records concerning his shoulder had been obtained from North Carolina. (Id., p. 29.) Plaintiff filed his letter-form Complaint with this Court on October 23, 2009, complaining that he was not receiving adequate dental care and medical treatment for his shoulder. (Document No. 1.) On January 11, 2010, Plaintiff filed an "Inmate Request to Staff" complaining that he is not receiving requested dental treatment.[11] (Id., p. 30.) On

---

[8]  Plaintiff contends that he "was shipped out on a writ of no known purpose." (Document No. 3, p. 3.)

[9]  On October 1, 2009, Dental Assistant K. Karl responded as follows: "You signed up for dental sick call on 9-3-09. The list is very long. Have 1 dentist for all inmates at FCI/FPC Beckley. There are inmates on the list that have been waiting for several months. You will be put on the call out as soon as possible." (Document No. 45, p. 27.)

[10]  On October 20, 2009, Dental Assistant Karl responded that "[y]ou will be on the call out next time Dr. Hughs is at the camp. Not sure when that will be." (Document No. 45, p. 28.)

[11]  On January 12, 2010, medical staff responded that "[y]ou have been added to the sick call list. Please watch the call-out." (Document No. 45, p. 30.)

February 18, 2010, Plaintiff filed an "Inmate Request to Staff" complaining that he lost the job at the law library based upon a false incident report filed by Officer Taylor. (Document No. 30, p. 23.) Accordingly, Plaintiff has clearly failed to exhaust his administrative remedies.

The undersigned must now consider whether Plaintiff is excused from exhausting his administrative remedies. Plaintiff alleges that prison officials are making the administrative remedy process unavailable to inmates. Specifically, Plaintiff states that he did not exhaust his administrative remedies because prison officials refuse to provide BP-9 forms and retaliate against inmates for attempting to exhaust their administrative remedies. Plaintiff filed numerous Affidavits from fellow inmates in support of his claim that prison officials are preventing exhaustion and retaliating against inmates.[12] These Affidavits, however, are extraneous evidence and do nothing more than support Plaintiff's own self-serving allegations. The undersigned notes that the Affidavits from fellow inmates relate to each inmate's personal experience regarding prison officials allegedly preventing exhaustion or retaliating against that inmate. Thus, the Affidavits do not support a finding or conclusion that prison officials retaliated against or prevented Plaintiff from exhausting his administrative remedies. Despite Plaintiff's above claims of retaliation and prevention of exhaustion, Plaintiff filed a BP-9 on February 5, 2009, and has filed at least six "Inmate Request to Staff." The undersigned notes that Plaintiff filed an "Inmate Request to Staff" just seven days prior to filing his letter-form Complaint with this Court. Since the filing of the instant action, Plaintiff has continued to file "Inmate Requests to Staff" and numerous documents with this Court and the Western District

---

[12] Inmates housed within SPC at FCI Beckley have filed a total of 76 administrative remedies from January 1, 2007 until April 1, 2010. The undersigned notes that 20 involve allegations of inadequate dental or medical treatment, 5 involve claims that misconduct by prison staff, and 1 involves an allegation of being denied the administrative remedy process. (Document No. 34, pp. 7 - 11.)

of North Carolina.[13] Thus, the Court finds that Plaintiff's allegation that prison officials made the administrative remedy process unavailable and retaliated against him to be without merit. Because exhaustion is statutorily mandated under the PLRA, the Courts have been reluctant to carve out any exceptions to the requirement. See e.g., Massey v. Helman, 196 F.3d at 733 ("[T]here is no futility exception to the PLRA's exhaustion requirement."); Booth v. Churner, 532 U.S. at 741, n. 6, 121 S.Ct. at 1825, n. 6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."). Plaintiff, therefore, failed to properly exhaust his administrative remedies concerning the above claims prior to filing his Complaint in the instant proceeding. Accordingly, Defendant's Motion to Dismiss, or in the Alternative Motion for Summary Judgment should be granted and Plaintiff's Motion to Amend his Complaint should be denied. The undersigned finds it unnecessary to consider the other reasons Defendant has submitted for dismissal.[14]

---

[13] Plaintiff states that he has a total of eight cases pending before this Court and the Western District Court of North Carolina. Excluding the instant case, Plaintiff has seven cases pending before this Court: (1) *Woltz v. United States*, Case No. 5:09-cv-209; (2) *Woltz v. Warden*, Case No. 5:09-cv-0932; (3) *Woltz v. Scarantino, et al.*, Case No. 5:10-cv-0095; (4) *Woltz v. FCI Beckley, et al.*, Case No. 5:10-cv-0487; (5) *Woltz v. United States, et al.*, Case No. 5:10-cv-0538; and (6) *In Re. Woltz*, Case No. 5:10-mc-0077; (7) *Woltz v. Clifton, et al.*, Case No. 5:10-cv-0980. Plaintiff appears to have one case currently pending in the Western District of North Carolina: *Woltz v. United States*, Civil No. 3:08-cv-0438.

[14] Defendant also argues that his Motion should be granted because "*respondeat superior* and supervisory liability are inapplicable in a *Bivens* Action." (Document No. 25, pp. 5 - 11.) Liability under the doctrine of *respondeat superior* is generally inapplicable to actions arising under 42 U.S.C. § 1983. *See Monell v. Department of Social Services of the City of NY*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Liability, however, may attach to a supervisory official if "conduct directly causing the deprivation was done to effectuate an official policy or custom for which [the official] could be liable." *Fisher v. Washington Metro. Area Transit Auth.*, 690 F.2d 1133, 1142-43 (4th Cir. 1982), *abrogated on other grounds by County of Riverside v. McLaughlin*, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). Further, supervisory officials may be liable for acts of their subordinates where "supervisory indifference or tacit authorization of subordinates' misconduct may be a causative fact in the constitutional injuries they inflict on those committed to

## 2.     **Motion for Injunctive Relief.**

Generally, in considering whether to issue an injunction, the District Court must balance the hardships likely to befall the parties if the injunction is, or is not, granted. Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189, 196 (4th Cir. 1977). Proper balancing of the hardships requires the District Court to weigh the relative importance of four factors:

(1)     the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied;

(2)     the likelihood of harm to the defendant if the requested relief is granted;

(3)     the likelihood that the plaintiff will succeed on the merits; and

(4)     the public interest.

Manning v. Hunt, 119 F.3d 254, 263 (4th Cir. 1997) (quoting Rum Creek Coal Sales, Inc., v. Caperton, 926 F.2d 353, 359 (4th Cir. 1991)). First, the Court finds there is no likelihood of irreparable harm as Plaintiff acknowledges that since the filing of his Complaint he has received treatment for his abscessed tooth. (Document No. 13, p. 1.) Next, it is well recognized that courts should generally avoid interfering with medical care of prisoners. See Bowring v. Godwin, 551 F.2d

_____

their care." *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984). Thus, the inquiry for the Court is whether the Defendant individually "acted wantonly, obdurately, or with deliberate indifference to the pervasive risk of harm." *Moore v. Winebrenner*, 927 F.2d 1312, 1315 (4th Cir. 1991).

Defendant contends that Plaintiff has failed to demonstrate specifically how he was personally involved in violating any of Plaintiff's constitutional rights. Essentially, Plaintiff appears to allege that Defendant violated his constitutional rights with respect to his failure to supervise employees. In order to succeed on a medical claim against non-medical personnel, plaintiff must establish that non-medical personnel were personally involved in a denial of treatment, deliberately interfered with treatment, or tacitly authorized or were indifferent to a prison physician's conduct. *Lewis v. Angelone*, 926 F. Supp. 69, 73 (W.D.Va. 1996). Non-medical prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. *Miltier v. Born*, 896 F.2d 848, 854 - 55 (4th Cir. 1990). The record reveals that Defendant was not aware of Plaintiff's allegation that medical staff were not providing adequate dental care or medical treatment for his shoulder. Finally, there is no evidence that Defendant was personally involved in a denial of treatment to Plaintiff, deliberately interfered with Plaintiff's treatment, or tacitly authorized the prison physicians' conduct. Accordingly, Plaintiff has improperly raised his claim against Defendant under the doctrine of *respondeat superior* and has failed to establish supervisory liability.

44, 48 (4th Cir. 1977)(The test for deliberate indifference "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients. Courts will 'disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . [as it] remains a question of sound professional judgment'"). Finally, the undersigned has determined that Plaintiff failed to properly exhaust his administrative remedies and therefore there is no likelihood that Plaintiff will succeed on the merits. Accordingly, Plaintiff's request for injunctive relief (Document No. 13.) should be denied.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **GRANT** Defendant's Motion to Dismiss, or in the Alternative Motion for Summary Judgment. (Document No. 24.), **DENY** Plaintiff's Motion for Interlocutory Injunctive Relief (Document No. 13.) and Motion to Amend Complaint (Document No. 45.), **DISMISS** Plaintiff's Complaint (Document Nos. 1 and 3.) and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Petitioner, who is acting *pro se*, and transmit a copy to counsel of record.

Date: August 4, 2010.

R. Clarke VanDervort
United States Magistrate Judge